UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


M.R.B. (XXX-XX-2462)                    CIVIL ACTION NO. 13-cv-1499

VERSUS                                  JUDGE STAGG

U.S. COMMISSIONER SOCIAL                MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


## REPORT AND RECOMMENDATION

**Introduction**

M.R.B. ("Plaintiff") was born in 1983, graduated high school, and attended some college.  She has past work experience as a pharmacy sales associate, department store sales associate, and fast food assistant manager.  She applied for disability benefits based on limitations caused by a stroke she suffered in August 2011 at the age of 28.

ALJ Kelley Day held a hearing and issued a written decision in which she found that Plaintiff was not disabled.  The Appeals Council denied a request for review.  Plaintiff filed this civil action to seek judicial relief.  Her single issue on appeal contends the ALJ did not apply proper legal standards when weighing the opinion of treating physician Dr. Mairus McFarland.  For the reasons that follow, it is recommended the Commissioner's decision be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal

standards.  <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Facts**

Plaintiff reported to the LSUHSC emergency room in August 2011 with complaints of migraine headache and left side numbness.  The diagnosis was cardiovascular accident. Tr. 228-29.  She returned several days later with complaints of chest pain and shortness of breath, plus multiple recent episodes of serious chest pain.  Considering the symptoms, and Plaintiff's strong family history of heart disease, she was admitted for further cardiac evaluation.  Tr. 226-27.

A physician's discharge summary noted a diagnosis of ischemic stroke.  Notes of physical exam at discharge were: "No pronator drift, 5/5 strength with normal gait.  The patient will be discharged home in a stable medical condition."  The report also noted: "Physical therapy was involved and signed off on the day of discharge stating that the patient is currently back to her normal strength."  Plaintiff was told to follow up with the neurology and rheumatology clinics in six weeks.  Tr. 206-07.

Plaintiff was referred to physical therapy from December 14, 2011 to January 12, 2012.  At her first visit, she said her chief complaint was lack of use of left arm and leg.  She

reported a hard time getting in and out of the bathtub, washing dishes, or folding clothes. She said that it felt like her foot dragged when she walked, and she often stumbled.  Tr. 261-62.  By December 29, Plaintiff reported that she was "doing good" and had no pain before or after therapy.  It was noted that she had made "significant improvements."  Tr. 271. Plaintiff was discharged after eight visits with the reason for discharge: "Therapy goals and expected outcomes have been achieved."  (Plaintiff testified at the hearing that Medicaid would not pay for more sessions.)  The report described Plaintiff as independent with bed mobility, basic and advanced transfers, and gait without assistive device on level surfaces ad lib, unlevel surfaces with use of a single tipped cane.  She was able to perform stair negotiation with a handrail and supervision.  She demonstrated the ability to perform home exercises.  She told the therapist she would soon return to her physician and would ask to return to work for half days.  Tr. 273.

Dr. Julana Lopez conducted a consultative evaluation in December 2011, just as the physical therapy began.  Plaintiff reported that she continued to have left leg and arm weakness and numbness and could not stand or walk for long periods.  Plaintiff had 5/5 grip strength in both hands, with 5/5 strength in all muscle groups except 3/5 strength in the left lower extremity.  There was no swelling, heat, or redness in any joint, nor were there structural deformities.  There was spasticity of left arm and leg.  Dr. Lopez concluded from her exam that Plaintiff should be able to sit for eight hours, stand for four hours, and walk for four hours per workday.  She also opined that Plaintiff could lift or carry objects weighing up to 10 pounds while walking with an assistive device.  There were no restrictions

on Plaintiff's ability to perform fine motor tasks unless they required the use of both feet. No assistive device was necessary.  Tr. 241-43.

A month later, in January 2012, Dr. Gerald Dzurik, a non-examining state agency physician, reviewed Plaintiff's medical records and opined that she had the ability to perform a limited range of light work, with the ability to sit for about six hours per workday but stand and/or walk for only four hours per day.  He added other limitations such as limited push/pull ability in the left lower extremities.  Tr. 59-61, 287.

After the August 2011 stroke, Plaintiff saw Dr. Mairus McFarland in November and December 2011, February 2012, and March 2012.  Tr. 321-24.  Dr. McFarland's notes state that Plaintiff was being followed by LSU neurology and receiving physical therapy and appeared to be improving from it.  His notes indicated decreased range of motion on the left side, but the final visit indicated full range of motion in the extremities.  It appears his primary treatment was to give instructions on diet and lifestyle counseling, with a goal of weight loss.

Three days before the hearing, Dr. McFarland completed a Stroke Questionnaire.  He indicated that Plaintiff had numerous symptoms ranging from slight paralysis to pain and fatigue, vertigo, headaches, difficulty remembering, confusion, depression, and speech/ communication difficulties.  He checked a box to indicate that the patient had significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station.  He estimated that Plaintiff could walk no more than two blocks without rest, could sit for only 30 minutes at a time and

stand for 45 minutes.  The estimated totals for each activity were less than two hours per workday.  Dr. McFarland said that Plaintiff would need a job that permitted shifting positions at will from sitting, standing, or walking, and that she would require unscheduled 20-minute breaks four times per day.  He stated that Plaintiff would need a cane to engage in occasional standing/walking, and she would need to elevate her leg 45 degrees for 85% of the workday.  He estimated she could never lift and carry objects weighing less than 10 pounds (the lightest category he could check).  He next found that Plaintiff would have significant limitations in doing repetitive reaching, handling, or fingering, and could never use her left arm and hand for such tasks.  He stated that she must avoid exposure to all environmental matters such as extreme cold, high humidity, perfumes, or cleaners.  He said she could never engage in postural activities such as stooping, climbing stairs, or crouching, and her impairments would cause her to be absent from work more than twice a month.  Tr. 311-16.

Plaintiff testified at the hearing that the whole left side of her body was affected by the stroke, including her left arm and leg.  She said the physical therapy helped "a little bit," but she had difficulty doing the strength training that she was told to continue at home.  She said she had "lack of strength in breathing and I'm just always tired."  Tr. 30-33.

Plaintiff said she was taking medication for neuropathy of her left leg and that she could not feel herself pick up her left foot, which caused her to stumble or drag the foot.  She said she used a cane when walking a long distance such as taking her daughter to school two blocks away.  Tr. 35-37.  Plaintiff said she had mild headaches before the stroke, but afterward had bad headaches that she attributed to a new sensitivity to light.  Tr. 38.  Plaintiff

said she was no longer going to LSU for follow-up care but was seeing Dr. McFarland once per month.  Tr. 41.

The ALJ noted Dr. McFarland said Plaintiff needed to elevate her legs during the day, and Plaintiff said that was because she had experienced swelling for about two months in her legs and feet.  She said the problem was no longer "as severe" but she still elevated to avoid cramps or clotting.  Tr. 44.  Plaintiff said the number of physical therapy sessions she received was limited by what Medicaid would cover.  Tr. 47.

**Analysis**

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."  Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985).  The treating physician's opinions, however, are far from conclusive.  "[T]he ALJ has the sole responsibility for determining the claimant's disability status."  Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

When good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony.  The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.  Scott, 770 F.2d at 485.  In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly."  Id.  See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ summarized the evidence discussed above and found that the medical records did not provide a basis to support the level of severity alleged by Plaintiff.  She afforded limited weight to the opinion of Dr. Dzurik because additional evidence submitted afterward suggested that Plaintiff was more limited than he determined.  Dr. Lopez's opinion was also afforded limited weight, "as it does not adequately consider the subjective complaints of the claimant."  The ALJ stated that Dr. McFarland's opinion was afforded "no weight, as his assessment is inconsistent with his treatment records and the claimant's testimony."  Tr. 14-16.

The ALJ found that Plaintiff could perform a limited range of sedentary work, which is the least demanding category of work.  It involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties.  A job is  sedentary if walking and standing are required occasionally (up to a total of 2 hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a); Social Security Ruling 83-10.  Additional limits were that Plaintiff could not climb ropes, ladders or scaffolds, and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.  She had to avoid unprotected heights and dangerous moving machinery, and she did require a cane for walking long distances or on uneven surfaces.  She could occasionally use her left non-dominant upper extremity to handle, finger, and feel.  Tr. 13.

Plaintiff argues that the ALJ erred in dismissing the opinion of treating physician Dr. McFarland and could do so only after conducting a full six-factor analysis set forth in 20 C.F.R. § 404.1527(c).  Those factors include length of treatment, frequency of examination, specialization, and consistency with the record as a whole.  The full six-factor review is required only when there is an absence of competing firsthand medical evidence.  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003).  The ALJ had competing firsthand medical evidence from Dr. Lopez, who examined Plaintiff in connection with her findings.

The ALJ adequately articulated good cause for the lack of weight she gave Dr. McFarland's opinion, as well as her treatment of the other medical opinions.  There is nothing in the treatment records from Dr. McFarland, the physical therapy records, or any other medical records that would support the extraordinary and extreme limitations that he suggested in his questionnaire.  The rest of the record indicates that Plaintiff has significant limitations on her left side that will interfere with her ability to work.  The ALJ recognized that when she found that Plaintiff was capable of no more than a limited range of sedentary work.  Plaintiff argues that her testimony is not necessarily inconsistent with Dr. McFarland's opinion, as suggested by the ALJ, but a reasonable person could find that the extensive limitations suggested by McFarland were not supported by Plaintiff's testimony.

The ALJ articulated good cause for her assessment of the evidence, and a vocational expert testified that a person with Plaintiff's age, education, and limited sedentary work ability could nonetheless perform the requirements of a representative occupation such as

receptionist.  The ALJ accepted that testimony and found that Plaintiff was not disabled within the meaning of the regulations.  Her decision is supported by substantial evidence.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of April, 2014.



Mark L. Hornsby
U.S. Magistrate Judge